## CREAMERY PACKAGE MFG. CO. v. CHERRY–BURRELL CORPORATION et al.

No. 134.

District Court, D. Delaware.

July 2, 1940.

Arthur G. Logan (of Logan & Duffy), of Wilmington, Del., and George W. Hansen (of Thiess, Olson & Mecklenburger), of Chicago, Ill., for plaintiff.

Hugh M. Morris and Alexander L. Nichols, both of Wilmington, Del., and Clair W. Fairbank (of Dean, Fairbank & Hirsch), of New York City, for defendants.

NIELDS, District Judge.

Motion to dismiss or, in the alternative, for summary judgment.

March 27, 1940, plaintiff the Creamery Package Manufacturing Company, hereinafter referred to as "Creamery Package", brought a declaratory judgment suit in this court against the defendants Cherry-Burrell Corporation, hereinafter referred to as "Cherry-Burrell", and the Girdler Corporation, hereinafter referred to as "Girdler". In its complaint plaintiff prays that (1) an injunction issue enjoining defendants from sending notices of infringement to plaintiff's customers and from suing said customers charging them with infringement of Vogt reissue patent No. 21,406; (2) the court declare said reissue patent to be invalid; and (3) the court declare that the ice cream freezer manufactured and sold by plaintiff does not infringe said reissue patent.

April 13, 1940, defendants filed a motion to dismiss upon the grounds that the complaint fails to set forth a cause of action within the jurisdiction of this court cognizable under the Declaratory Judgments Act. Defendants also move for summary judgment upon the grounds that (a) no actual controversy existed between the parties at the time of the filing of the complaint; (b) prior thereto, Cherry-Burrell had not charged plaintiff with infringing said reissue patent; and (c) prior thereto neither of the defendants had threatened to sue any customer of plaintiff or notified any customer of its intention to sue said customer or customers.

The Declaratory Judgments Act, being section 274d of the Judicial Code, 28 U.S. C.A. § 400, reads:

"(1) In cases of actual controversy except with respect to Federal taxes the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

"(2) Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application shall be by petition to a court having jurisdiction to grant the relief. * * *"

December 21, 1930, U. S. patent No. 1,783,864 issued to Clarence W. Vogt for "Apparatus and Process for Treating Materials". This patent was assigned by Vogt to Girdler which granted an exclusive license thereunder to Cherry-Burrell. February 24, 1936, the exclusive licensee brought suit in the United States District Court for the Eastern District of Pennsylvania against Abbotts Dairies, Inc., charging infringement of the Vogt patent. Abbotts Dairies, Inc., was a purchaser of an ice cream freezer from Creamery Package, the plaintiff in this suit. October 4, 1938, judgment was entered in that suit holding claims 3 and 5, the only claims in issue, invalid. Girdler Corp. v. Abbotts Dairies, 24 F.Supp. 551.

November 22, 1939, the judgment of the District Court was affirmed by the Circuit Court of Appeals for the Third Circuit. 106 F.2d 998. January 11, 1940, the mandate of the Court of Appeals was filed in the District Court.

Within less than a week, i. e., January 17, 1940, Vogt applied for a reissue of his patent. February 20, 1940, Girdler as assignee disclaimed claims 3 and 5 of the Vogt patent. March 19, 1940, a reissue of the Vogt patent was granted by the patent office No. 21,406. The following day, i. e., March 20, 1940, the attorney for Girdler wrote a letter to Creamery Package enclosing a copy of the reissue patent and stating: "The purpose of this letter is to notify you of the grant of the Reissue patent and your infringement thereof, and to specifically notify you that unless infringement ceases, it will be necessary to take legal action". A copy of this letter was sent to the exclusive licensee.

March 22, 1940, Cherry-Burrell, the exclusive licensee, wrote a letter to Creamery Package stating: "Law suits are very expensive and very annoying. It seems to me that it might be possible to work out some type of plan that would make our license with The Girdler Corporation non-exclusive, and provide for a license to your Company. If something of this kind could be done, it seems to me that there might be great advantages to all concerned."

March 25, 1940, Creamery Package wrote two letters, one to Fairbank and the other to Cherry-Burrell, in reply to their letters. In the letter to Fairbank, Creamery Package said: "I will communicate further with Mr. Cherry within the next few days in response to the suggestions made in his letter concerning this matter." Creamery Package wrote to Cherry-Burrell: "This present development of the continuous ice cream freezer litigation is a surprise to me and naturally I wish to discuss it with our people. I will communicate further with you in the matter within the next few days."

March 27, 1940, Creamery Package filed this declaratory judgment suit against Cherry-Burrell and Girdler.

April 10, 1940, Girdler and Cherry-Burrell brought suit against Creamery Package in the Northern District of Illinois charging defendants with infringing the reissue patent.

From the above facts it is apparent that the present suit is a continuation of the vigorously contested controversy between the same parties relative to plaintiff's right to manufacture and sell the same ice cream freezer. On the day following the reissue of the Vogt patent, Fairbank, attorney for Girdler, notified Creamery Package that it was infringing the reissue patent and would be sued therefor. The letter giving this notice invited no reply. The notice was the usual and customary warning before an infringement suit is brought. Apparently it was so intended by Fairbank and was so understood by Wallis, president of plaintiff. This is borne out by defendants' use of the notice in the complaint in the infringement suit brought in Illinois by defendants against plaintiff. The complaint alleges: "11. That the Plaintiffs have notified defendant in writing of said Reissue Letters Patent and the defendant's infringement thereof, and in spite of such notice said defendants continued and threatened to continue such infringement."

Upon receipt of the Fairbank letter of March 20 and in defiance of its warning, plaintiff continued the manufacture and sale of its freezer as it had since 1936. There then arose a technical but actual controversy between the parties. It was a

justiciable controversy. However, under the facts of this case, plaintiff can not maintain its suit under the Declaratory Judgments Act.

Plaintiff was notified that it would be sued for infringement of the reissue patent. Thereupon this suit was brought. Within three weeks and pursuant to that notice defendants sued plaintiff in the federal district whereof it was an inhabitant. The proceedings there instituted have been stayed awaiting the disposition of this case.

It is the duty of the court to deal with still another phase of the case. In its letter of March 25, 1940, to attorney Fairbank plaintiff states:

"This will acknowledge your letter of March 20, relating to the reissue patent No. 21406, which I find awaiting my return to the office this morning.

. "I also have a letter from Mr. W. L. Cherry, dated March 22, and which relates to the same subject matter.

"I will communicate further with Mr. Cherry within the next few days in response to the suggestions made in his letter concerning this matter."

In his letter to W. L. Cherry, president of Cherry-Burrell, plaintiff states: "This present development of the continuous ice cream freezer litigation is a surprise to me and naturally I wish to discuss it with our people. I will communicate further with you in the matter within the next few days".

In the above letters there is clearly implied an undertaking by plaintiff to withhold action until plaintiff has had an opportunity to consult with others and then to communicate the result of such consultation to defendants. The statements in these letters of March 25 and the filing of the complaint by plaintiff in this suit on March 27, with no further communication to either defendant, can not be reconciled with good faith on plaintiff's part. The filing of the complaint in this suit under the circumstances of this case is not consistent with equity and good conscience. "He that hath committed iniquity shall not have equity". [Milwaukee & M.] Railroad Company v. Soutter, 13 Wall. 517, 523, 20 L.Ed. 543.

In the exercise of its discretion the court will grant defendants' motion to dismiss the complaint.