**GOODWIN v. CARLOSS CO. et al.**

No. 8347.

Circuit Court of Appeals, Sixth Circuit.

Jan. 8, 1941.

Sam D. Rhem, Jr., of Memphis, Tenn. (Chas. L. Neely, Sam D. Rhem, Jr. and James H. Hicks, all of Memphis, Tenn., on the brief), for appellant.

John R. Walker, Jr., of Memphis, Tenn. (John R. Walker, Jr., and R. G. Draper, both of Memphis, Tenn., on the brief), for appellees.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

Suit against appellees for infringement of Letters Patent No. 2,048,158, July 21, 1936, to appellant Goodwin for an "Apparatus for Purifying and Cleaning Water." The court concluded that the patent was invalid; and if valid that it was uninfringed.

Claim 1 only is involved.

The apparatus is used primarily in small "local systems" such as for school or farm, where the user has an independent water supply. It is designed for charging the water with air under pressure within an enclosed piping system, the purpose being to break the water into foam, thus liberating gases therefrom with disposition through a vent. Appellant claimed that his was the first system of aeration which depended solely upon the force of compressed air to break up the water as distinguished from systems using gravity, baffle plates, chemicals, coke beds, etc.

Claim 1 is for,—"An apparatus of the class described comprising a pressure tank, a pipe line delivering water within the tank, means for admitting air under pressure into said line, said means for admitting air including an expansion chamber in communication with said line, and an air line leading from a source of air under pressure to the expansion chamber, said expansion chamber extending vertically above the pipe line delivering water, with the air line entering at the top of the expansion chamber."

██ The claim calls for "means" for admitting water into the water line. In Davis Sewing Machine Co. v. New Departure Mfg. Co., 6 Cir., 217 F. 775, 782, we said that,—"* * * where used with reference to the exact point of novelty, 'means' or 'mechanism' may expose the claim to attack on the ground that it is functional * * *. But where used with reference to the make-up of the field in which the real invention finds its usefulness or with reference to the connecting parts which permit the salient novelty of the invention to accomplish its function, these words are only a convenient formula of the broadest equivalency of which the real invention permits. * * *"

The apparatus and "means for admitting air" as disclosed by the claim and elaborated in the specification and drawings were simple. Both the water line from the pump and the air line from the compressor had small check valves to retard any tendency to back-flow. The air was injected into the water through a pipe or "nozzle" slightly smaller than the air line and curved to feed the air in the direction of the flow of the water. The junction was made at a slightly enlarged fitting in the water line, the air line feeding in vertically from above. Interposed between the "nozzle" and the air line proper was an enlarged section of pipe, perhaps four times the diameter of the air line, the "expansion chamber" of the claim.

The file wrapper discloses that the original claim 3, Claim 1 here, called for the expansion chamber but was twice rejected and was not allowed until an amendment was inserted which placed the expansion chamber vertically above the water line, with the air line entering at the top of the chamber. The file wrapper indicates that the Examiner considered that the expansion chamber would serve no purpose unless disposed vertically over the water line where he thought it had some use as an additional check valve to prevent water following the air line back to the compressor. This understanding was carried into the specification which said: "The member * * * or more particularly the bore thereof as hereinbefore stated, is of a diameter in excess of the diameter of the bore of the pipeline * * * so that the member * * * will serve effectually as an expansion chamber where air may collect to prevent any water from forcing its way back through the line * * * to the compressor. * * Also interposed in this line * * * is a nonreturn or check valve * * * to further provide means to prevent air flowing back to the compressor."

One other feature of the patentee's "means" is the coil which served as a fur-

ther "mixing element" for the air and water, which had been reduced to a "condition of foam" by the air jet. The mixture passed from the coil into the pressure tank within which the released gases moved to the top and passed out through a vent when the water had exceeded a certain height. The water moved on through a pipe to a filter tank with which we have no concern.

The injection of air under pressure into a water line in advance of a pressure tank is old. Examples of such apparatus are depicted in appellee's Exhibit 34, a catalog of Deming pumps, copyrighted in 1920. The air was not introduced in the Deming apparatus for purposes of aeration but to supply pressure to the water line. Patent No. 2,009,231, July 23, 1935, to Hartman, disclosed a method of mixing ozonized air with water "for the purpose of purifying the latter." The gas and water were mixed in the injector and passed through a coil which kept the gas dispersed throughout the water in an emulsified condition until they were introduced into the "vortex chamber" where the gas passed upward to the atmosphere through a vertical pipe and the water overflowed the top of the vortex chamber into a storage tank.

The Deming pumps did not involve aeration except incidentally and the Hartman apparatus seems not to have been operated under pressure, but these references serve to show the limited field in which Goodwin was working, and under Davis Sewing Mach. Co. v. New Departure Mfg. Co., supra, if his "means" are not functional they must be considered simply as a part of the "make-up of the field in which the real invention finds its usefulness." Comparison with the other claims, the specification and the file wrapper disclose that Goodwin considered his real invention to be the expansion chamber, the stated purpose of which was "to prevent any water from forcing its way back through" the air line to the compressor. If this were its sole usefulness there is no operative connection with the "means" described and the claim would be invalid as embodying a mere aggregation of elements. Sands Mfg. Co. v. Smith, 6 Cir., 53 F.2d 459, 461.

However, there was evidence to the effect that the expansion chamber served as a reservoir for the compressed air; induced an even flow of air to the nozzle, and achieved a more through aeration of the water than if the air were fed in jets directly from the compressor without the cushioning effect of the expansion chamber. An even flow of air may be desirable in a system depending upon compressed air alone but Goodwin's device by which he now claims to attain an even flow does not constitute invention. In its relationship to an even flow of air it represents nothing more than a miniature reservoir which could be readily installed upon demand by any skilled mechanic. It is a matter of common knowledge that air storage tanks with outlets for even flow therefrom are maintained at filling stations for inflating automobile tires.

It is unnecessary to consider whether the Carloss injector device and perforated plates set athwart the pipe carrying the air-impregnated water infringed Claim No. 1.

The District Court found the entire patent invalid, but, as Claim No. 1 was the only claim in issue, the decree will be modified to the extent that Claim No. 1 only is held invalid, and as so modified is affirmed.