Charles Kremer **BAIN**, Plaintiff-Appellant,

v.

The **M. A. HANNA COMPANY**, Defendant-Appellee,

and

**Blaw-Knox Company**, Intervenor-Appellee.

No. 15025.

United States Court of Appeals Sixth Circuit.

May 18, 1964.

Edmund C. Rogers, St. Louis, Mo., (Lawrence C. Kingsland, St. Louis, Mo., James P. Hume, Chicago, Ill., George S. Roudebush, St. Louis, Mo., on the brief), for appellant.

Walter J. Blenko, Sr., Pittsburgh, Pa. (Paul Rahm, Iron Mountain, Mich., Walter J. Blenko, Jr., Pittsburgh, Pa., on the brief), for appellees.

Before MILLER and CECIL, Circuit Judges, and THORNTON, District Judge.

THORNTON, District Judge.

Plaintiff appeals from a judgment of the District Court holding that (1) all of the claimed novel features of Bain Patent No. 2,667,750 had been described in the cited prior art and specifications, (2) Bain Patent No. 2,667,750 is lacking in novelty and invention, and (3) the method used by defendant in the sinking of the Homer-Wauseca shaft was neither a copy nor was it the equivalent of the method described in Bain Patent No. 2,-667,750. This determination concluded an action for damages for alleged infringement of a patent covering a "method and apparatus for sinking mine shafts," being United States Patent No. 2,667,750 issued to plaintiff-appellant February 2, 1954.

The opinion of the District Judge recites that:

"After the complaint was filed the plaintiff, a resident and citizen of St. Louis, Missouri, consented to the intervention of the Blaw-Knox Company, a Delaware corporation, and the intervening defendant became the actual defendant in the case in place of M. A. Hanna Company, an Ohio corporation. Prior to trial it was agreed by counsel for all parties that any error in the description of the original defendant or the nature of its entity, whether a corporation or partnership, or the name of the actual owner of the premises in-

volved, could be considered as waived by the Court, and that the Court should limit itself to the determination of the validity of the patent, whether the patent was infringed by the intervenor (* * *) Blaw-Knox Company, and the extent of damage sustained by the plaintiff, if any."

"The alleged infringement took place during the construction of a mine shaft described as the Homer-Wauseca shaft at Iron River, Michigan, within the Northern Division of the Western District of Michigan. The alleged acts of infringement are claimed to have occurred during the years 1956 to 1959. This Court is asked to consider only Claims 1, 2, and 3 of the patent in suit, all of which relate to a method for the sinking of a concrete lined circular mine shaft."

The main thrust of plaintiff's contention here, as advanced in briefs and argument, is best stated in plaintiff's own language, appearing in his brief, as follows:

"It is plaintiff's position and conviction that the court held the patent invalid without considering it as a *method* or related series of *process steps,* but only as an unrelated series of *mechanical devices. Nowhere in the Court's Opinion is there any statement setting forth the Bain method.*

"This basic error of law led the trial court into a completely erroneous approach to the patent. And indeed, the court was caused to make some findings that are factually in error as to what plaintiff's method is.

"The trial court conceded that it did not understand plaintiff's position as to novelty, a confusion entirely understandable if the court was attempting to understand the Bain *method* in terms of a collection of *mechanical elements."*

Preliminarily, we will appraise the foregoing criticism in the light of what the record before us discloses. In his opinion the District Judge stated that "(I)t was with difficulty that the Court determined from plaintiff's proofs and arguments the elements of novelty upon which the plaintiff relied." We appreciate here on review the District Court's "difficulty" as we attempt to reconcile the content of plaintiff's briefs and argument with the testimony and exhibits. Because of plaintiff's insistence that the District Judge was confused in his deliberations, a few excerpts from the transcript of the trial court proceedings will perhaps serve to pinpoint the source of any confusion that may have become inherent in the totality of the lower court record. The following colloquy between the District Judge and plaintiff's counsel is illuminating in this regard:

"The Court: Is that going to be material? Isn't the language perfectly clear, Mr. Cohn? I mean, is there any confusion in your mind as to the meaning of that?

"Mr. Cohn: Yes, I think that there is, there may be, because 'supporting' could well mean 'stabilizing,' and that is what I think the patentee means to infer as to the use of those jacks.

"The Court: Are the terms 'stabilizing' and 'supporting' synonymous?

"Mr. Cohn: No, they are not.

"The Court: Then if the term 'supporting' is used in the patent, it means 'supporting,' doesn't it?

"Mr. Cohn: Yes.

"The Court: And you can't substitute the word 'stabilizing,' can you?

"Mr. Cohn: No, that is true, you cannot.

"The Court: Then let's stick to the language in the patent. That is my point, Mr. Cohn."

Another excerpt of interest in a similar vein is from an examination of plaintiff by his own counsel. It reads as follows:

"Q. Well, is that concrete in comparison or is it in tension or—

"A. It is in a semi-plastic or non-supporting condition; I mean, right after the initial set. So the entire weight of the concrete has to be kept in a quiet, immobile form.

"Q. Isn't it fair to say that the concrete at the bottom of the form that has been at the early stage of the pour is in a much more solid state than that at the top?

"A. True.

"The Court: Wouldn't that depend on how long it took to pour?

"Mr. Cohn: Yes; yes, it would.

"The Court: You know, Mr. Cohn, we are going to take a recess, but the last five minutes sounded like rather graceful cross-examination.

"Mr. Cohn: All right, I will be more careful, Your Honor."

A third excerpt we deem helpful to set forth is from the testimony of an expert produced by plaintiff. It follows:

"Q. You made mention of jacks being employed for the purpose of locating the form; I think you referred to the Stein deposition in that regard.

"Will you not agree that the use of jacks to move a heavy object which is resting on muck or on ground or any sort of a base is one of the oldest expedients in the engineering art?

"A. Certainly. Even a car jack does lifting of the car.

"Q. Yes. You don't attribute any genius to Mr. Bain in supplying the idea of using a jack to move or position a form, do you?

"A. No, but I think the wording is a little wrong. I don't think he uses it to move the form. I think he uses it to tighten up, to get pressure vertically, and that prevents lateral stability. But this is just one method of doing it.

"The Court: It prevents lateral stability, Dean Fisher?

"The Witness: I am sorry; it prevents lateral mobility.

"Q. There is nothing new about that, either, is there?

"A. I don't think so."

As part of plaintiff's theory of confusion on the part of the Trial Judge, plaintiff asserts that there was error in considering the Bain method claims as if they were claims for structural combinations. We assume that the basis of plaintiff's contention in this regard is the reference by the District Judge, in his opinion, to the use of certain apparatus and/or structural combinations in describing the function of the Bain method. In making this charge plaintiff apparently has lost sight of the fact that Bain Patent No. 2,667,750 is headed "METHOD AND APPARATUS FOR SINKING MINE SHAFTS" and that each of Claims 1, 2 and 3 of that patent, which the plaintiff here alleges has been infringed, is headed "The Method of Sinking Mine Shafts," and that each claim then goes on to place structural parts or forms in certain positions so that the method of sinking a mine shaft can function as per the claims. Supportive of the propriety of the Trial Judge's use of structural or apparatus terms in his consideration of the patent in suit is the following statement made by counsel for plaintiff at the trial of this cause:

"Mr. Cohn:[1] I don't intend to say that certainly a patentee is not entitled to—let me go back for just a minute, Your Honor. I say that my point is that a patentee is entitled to all of the functions that naturally flow from a piece of apparatus in his patent, whether he has described all of those functions or purposes or not."

The last few excerpts we wish to set forth here serve to make abundantly clear, we think, that plaintiff's contention as to the "confusion" of the Trial Judge

---

[1]. Counsel for plaintiff.

is unfounded. The excerpts are as follows:

"Mr. Kingsland:[1] Well, everyone has his own theory about how to try a case. Here is the point, as I see it. Your Honor has exhibited a clear knowledge of the background of this case. A record for a court of appeals doesn't have that aspect at all. And it seems to me that the record has got to be so that the court of appeals could understand it in the event of an appeal."

and

"The Court: If I understand you correctly, it is the plaintiff's position that what has been referred to as the Bain method as outlined in the specifications and claims of the patent in suit describes a method for sinking a circular concrete-lined shaft with or without steel members within the shaft following the construction down. Is that right?

"Mr. Cohn:[1] That is true, Your Honor.

"The Court: If I understand Mr. Blenko's position, it is that the specifications and claims of the patent in suit describe only a method for constructing what has been described as a gun barrel shaft. Is that right?

"Mr. Blenko:[2] That is correct."

We will now direct our attention to the three claims of Bain Patent No. 2,-667,750 here in suit. In his application for this patent Bain represented under oath as follows:

"The usual practice has been to excavate the shaft to its full depth and then to apply the concrete lining to the shaft walls, starting at the bottom and working upward to the top of the shaft.

"An object of this invention is to provide a method whereby a concrete lining may be applied to the shaft wall as the excavation of the shaft proceeds, working from the top downward."

This language is found in the patent issued to plaintiff. When questioned in the trial court proceedings concerning these representations Bain testified as follows:

"Q. When you took steps to apply for what is now the patent in suit, was it your understanding that lining the shaft from the top down in stages as the excavation proceeded had originated with you?

"A. No, sir.

"Q. You knew, then, before you filed your patent application, that lining from the top down in stages as the excavation proceeds was old and well-known in the art; is that right?

"A. That is true.

"Q. And you also knew that the practice in such cases was to support the forms on the muck, center them, block them, and to pour concrete between those forms and the wall, with the forms thus supported; is that correct?

"A. Yes.

It is clear to us from our review of the trial court record presented here that, procedurally, lining was more often accomplished from top to bottom than from bottom to top, and that the former is old in the practice is corroborated by the testimony of witnesses who have been identified with the industry for many years.

Plaintiff explains the function of his method, as part of his criticism of the findings of the Trial Court in the following words: "We have emphasized mechanical elements the Court seemed to consider to be the Bain invention. No concept of a sequence of process steps appears in this finding—no sequence of excavating to a predetermined depth, *suspending* a form from a prior pour so that it can assume a substantially vertical position, of *aligning* and *stabilizing*

---

1. Counsel for plaintiff.

2. Counsel for defendant.

it at the top, of plumbing it, *making it vertical* and stabilizing it at the bottom, then after pouring it, removing the bottom supports to clear the way, and *repeating* the cycle by *digging*, with no delay and with great saving of time and money" and supplements this explanation with the additional statement that: "The Bain method *never raises* a form *above* the previous pour. It always *hangs* the *form* below a previous pour. It then aligns the forms from the previous pour while the forms are in suspension—a vastly quicker procedure than jockeying thirty-ton forms resting on the ground. The Bain method stabilizes the forms in plumbed and aligned positions, top and bottom. Then pouring takes place. * * * Bain fills the forms each time with concrete, from the bottom of the form to the top of the form * * liquid cannot fill a container from its top to its bottom. * * * Bain always *suspends* the form *below* a previous pour: methods (1) and (2) *always* rest a form *above* a previous pour. By Bain's method, he was enabled to align, plumb and stabilize in suspension. He was able to renew digging almost as soon as pouring of one section was completed, because he could leave its green concrete protected by the forms. This enabled him to have his crew working almost continuously, with no time out for curing of the concrete."

The District Judge apparently based his determination of invalidity upon both lack of novelty by reason of anticipation and lack of invention. Invention is lacking if it appears that the development of the alleged invention from the entire prior art would be obvious to one skilled in the art. Allied Wheel Products v. Rude, 206 F.2d 752, 760 (CA 6, 1953). Novelty by reason of anticipation is lacking if it appears that all of the elements of the patent in question are found in one single description or structure where they do substantially the same work in the same way. Thus, if an invention is anticipated it does not meet the test of novelty. As this Court said in Aluminum Company of America

v. Sperry Products, Inc., 285 F.2d 911, 917 (CA 6, 1960), "It is elementary that the elements requisite to the validity of a patent are novelty, utility and invention." The Court below determined that two of these were lacking. Bearing in mind that the Court there, as here, was confronted with three claims only and that defendant advanced its contention of invalidity on the grounds of both lack of novelty and lack of invention, we have reviewed the record presented here to determine if both such elements are therein substantiated as lacking.

We have concluded that the Trial Court's finding of lack of invention is not warranted by this record. There is no evidence that the alleged invention described in Claims 1, 2 and 3, from the entire prior art, would be obvious to one skilled in the art. The record simply does not contain any factual basis for such finding and conclusion. However, there is ample basis in the record for finding and concluding that the element of novelty is lacking for reason of anticipation by prior art—Lardy Patent No. 1,003,140, issued September 12, 1911.

In his brief, for illustrative purposes, plaintiff treats Claim 2 of the Bain patent as typical of Claims 1 and 3; Claim 2 reads as follows:

"The method of sinking mine shafts, comprising, excavating a shaft section to a predetermined depth, rigidly mounting a plurality of guide beams in vertical position along the sides of the excavated section, securing concrete-supporting bottom forms to the lower portions of said beams above the bottom of said excavated section, securing upright forms to said beams to extend along the wall of said excavated section but spaced therefrom, said bottom forms closing the space between said upright forms and said wall, pouring concrete between said upright forms and said wall, excavating a succeeding shaft section below said first section, and in like manner molding a succeeding shaft-lining section below the preceding one."

In comparing Lardy Patent No. 1,003,140 with Claim 2 and its typical counterparts, Claims 1 and 3, we find and analyze the Lardy patent as disclosing the following: Lardy specifies that his invention relates to a method of lining shafts with concrete in which the actual operation of lining takes place from above downward so that the lining can directly follow the sinking of the shaft; Lardy further teaches that in the case of succeeding concrete sections, the filling of the space behind the same is effected through holes in the blocks of the superposed ring, thus disclosing that Lardy excavates to a predetermined depth less than the final depth. Lardy further specifies that assuming that the platform or staging was in a horizontal position, the bolts are first introduced and a U-shaped ring is laid upon the said staging and, like the guide beams of the Bain patent, these bolts are so positioned as to be distributed around but spaced inwardly from the circumferential face of the excavation and extend vertically downward; Lardy further recites that after the concrete ring has thus been built up the platform is raised and the said ring is rigidly secured to the suspension ring by means of the bolts and nuts, and these threaded nuts serve the same purpose as Bain's connecting plates.

An examination of Figures 5 and 6 of the Lardy patent discloses two methods of preventing the escape of liquid concrete: Figure 5 shows a support with a sharpened or pointed end which may be driven into the circumferential face of the excavation; Figure 6 shows a support having a flat end that abuts the rounded face of the excavation. Each demonstrates a method of providing bottom forms for preventing the escape of liquid concrete. The specifications further tell us that the structure can be built up of H-shaped iron rings and thin concrete plates or slabs with iron insertions. The iron rings are screwed into and carry slab-like blocks by means of grooves and tongues in order to prevent the filling material from falling behind the blocks. An auxiliary ring is so fastened to short bolts that a space remains exactly as in the first described construction for the reception of the supports having felt heads, establishing that Lardy has concrete supporting bottom forms which are secured to the portions of the bolts. A study of Figure 3 of Lardy reveals a space between the bottom forms and the bottom of the excavated section of the shaft. From Lardy we further find that concrete or beton [3] blocks are "employed in this method of carrying out my invention." These blocks are slightly curved longitudinally and are formed top and bottom of an angular configuration, the one to engage and fit the other. When installed these blocks are arranged in a complete circle within and around the wall of the excavation with a space between the installed blocks and the excavated wall, and serve as forms to confine the fluid concrete that is poured into the space created by the installation of the forms between the excavated shaft and the forms and the bottom forms further contain the fluid concrete at the predetermined depth for any particular pour.

The Lardy patent further relates that in the case of the succeeding concrete sections, the filling of the space behind the same is effected through holes in the blocks of the superposed ring, thus providing a method in the form blocks of pouring the concrete into the space already prepared for it. This method provides an actual interlocking of the set concrete with the surrounding area that becomes a monolithic structure even before the concrete has become fully cured. This constitutes a shaft lining section. At the time when the excavated shaft is ready for additional shaft lining, Lardy continues on to another predetermined depth using the same method for pouring the concrete.

3. Concrete made after the French fashion by mixing a gravel or other material with a mortar of cement and sand. (Webster's International Dictionary, 2nd Edition.)

■ The foregoing comparison of the claims of the Bain patent here in suit with Lardy establishes that they are anticipated by and define nothing patentable over Lardy Patent No. 1,003,140. "The review by this court of the findings made by a District Judge in a patent case are subject to the limitations of Rule 52(a), F.R.C.P., 28 U.S.C.A., and will not be set aside unless clearly erroneous." Sterling Aluminum Products v. Bohn Aluminum Brass Corp., 298 F.2d 538, 539 (CA 6, 1962).

Plaintiff, in his presentation here, attempts to distinguish the Lardy patent from the Bain patent in a number of particulars, all of which have been noted in reviewing this appeal. We discuss two:

1. "Lardy has no removable forms." In the Bain patent, Claims 1 and 2 contain no requirement that the forms be removed or be removable; Claim 3 includes the word "removable" in relation to the use of forms and the fact that the word "removable" is included in Claim 3 and omitted in Claims 1 and 2 would indicate that the use of removable forms is an optional variation.

2. "It [Lardy] is a built-up masonry block lining for wells." An examination of the Lardy patent, starting with the title and proceeding through the specifications and through the three claims, fails to disclose the use of the word "wells." The title of the Lardy patent is "Lining Shafts with Concrete." The second paragraph in the Lardy patent reads: "This invention relates to a method of lining shafts with concrete." The specifications then continue, using the word "shaft" in the same descriptive manner as is found in the Bain patent specifications and claims.

■ Because of our foregoing ruling affirming the Trial Judge's finding and conclusion of invalidity for lack of novel-

ty, we are not required to rule on the issue of infringement, but for the sake of completeness herein, we hold that even if the claims of the patent here in suit are valid they are, nevertheless, not infringed by defendant's method. We base our holding on the same reasoning as that employed by the District Judge. See Harvey v. Levine, 322 F.2d 481, 486 (CA 6, 1963).

The issue for consideration by the Trial Court was whether or not Claims 1, 2 and 3 were infringed and whether or not the same three claims were invalid. A determination was made by the Court as to each of these respective claims. The Court entered the following Order dated March 1, 1962:

"This matter is before the Court on a complaint alleging infringement of United States patent No. 2,667,750 and the Court having heard the proofs and allegations of the parties, the arguments of counsel and after due consideration of briefs submitted, filed written opinion together with findings of facts and conclusions of law, determining the patent to be invalid and for judgment in favor of defendant.

"Therefore, It Is Ordered now here that plaintiff's complaint as filed June 24, 1960 be and the same is hereby dismissed and it is further determined by the Court that all claims of the patent in suit are invalid."

Inasmuch as there are twelve claims in the patent which were not litigated (4 to 15), the language of the Court's Order "that all claims of the patent in suit are invalid," insofar as it may be construed to apply to claims other than Claims 1, 2 and 3, will be modified so as to be applicable to the three claims in suit only and said Order as so modified is affirmed. This Court has employed such modification procedure on a prior occasion in the patent case of Goodwin v. Carloss, 116 F.2d 644 (CA 6, 1941). See the last paragraph therein.