John Phil **FELBURN**, Plaintiff-Appellant,

v.

The **NEW YORK CENTRAL RAILROAD COMPANY**, and **Fruehauf Trailer Company**, Defendants-Appellees.

No. 15897.

United States Court of Appeals
Sixth Circuit.

Aug. 31, 1965.

Albert R. Teare, Cleveland, Ohio (Donald A. Teare, Teare, Fetzer & Teare, Cleveland, Ohio, Michael Williams, Warren, Ohio, on the brief), for appellant.

William C. Conner, New York City (Curtis, Morris & Safford, New York City, John F. Dolan, Cleveland, Ohio, on the brief), for appellee.

Before O'SULLIVAN and McALLISTER, Circuit Judges, and ARTHUR M. SMITH, Associate Judge.[*]

SMITH, Associate Judge.

This is an appeal from a judgment of the District Court for the Northern District of Ohio, Eastern Division (Connell, C. J., presiding), dismissing plaintiff Felburn's complaint. 225 F.Supp. 991.

Felburn's complaint alleged infringement of two United States patents, Nos. 2,693,889 [1] and 3,002,636 [2] (hereinafter '889 and '636, respectively) which were issued to and are owned by Felburn. Defendants denied the allegations of infringement and also raised the affirmative defense of invalidity of both patents. 35 U.S.C. § 282. After conclusion of the trial, the District Court adopted, essentially in toto, the findings of fact and conclusions of law proposed by defendants and held 1) that defendants had infringed none of the claims of either patent, and 2) that both patents were invalid.

Before reviewing the questions of validity raised on this appeal, we shall summarize briefly the subject matter of the patents in issue.

### The '889 Patent

The '889 patent discloses and claims a semi-trailer and tractor assembly in which the load-carrying platform or base of the trailer can be detached from its wheel assembly or bogie, thereby freeing the bogie and tractor for other uses while the trailer is awaiting loading, unloading or repairs. As pointed out in the specification:

> Heretofore, it has been customary, in the distribution of freight by motor truck, to drive a tractor-trailer unit to the shipping source

[*] United States Court of Customs and Patent Appeals, sitting by designation.

1. Entitled "Trailer with Detachable Load Platform" and issued Nov. 9, 1954 on application serial No. 199,219, filed Dec. 5, 1950, to plaintiff Felburn prior to his change of name from Fellabaum to Felburn. See District Court's Finding of Fact No. 3.

2. Entitled "Method of 'Piggie-Back' Transportation" and issued Oct. 3, 1961 on application serial No. 16,720, filed Mar. 22, 1960 as a continuation of application serial No. 733,127, filed May 5, 1958, which in turn was a continuation of application serial No. 600,528, filed July 27, 1956.

and either wait for the trailer to be loaded or spot the trailer and return with the tractor unit at a later time when the trailer is loaded. It will be appreciated that this is costly procedure since expensive equipment and personnel is tied up during the time the trailer is loaded or during the time involved in returning for the loaded trailer. * * *

\* \* \* \* \* \*

My invention provides means for distributing freight in efficient and economical manner. The freight distributing means of my invention is extremely flexible and may be used in truck-to-truck systems as well as in truck-to-rail systems and comprises components the majority of which are standard construction or of slightly modified standard construction.

\* \* \* \* \* \*

It will be appreciated that because of the interchangeability of equipment, a great savings in initial equipment cost is effected, since my invention requires less equipment than prior systems. Further, because the wheel units are interchangeable and readily removed, any unit requiring mechanical attention may be removed to the repair shop and replaced by a unit in good operating condition.

The system operates as follows: The rear end of the trailer is provided with a cam surface which is engageable with a bumper block located at the edge of a platform, such as a loading dock or railroad flat car. The platform is of a vertical height slightly above that of the trailer base, so that the tractor may back the trailer against the bumper block to cam the rear portion of the trailer up onto the bumper block and remove its weight from the bogie. The underside of the trailer base is provided with tracks extending the full length of the body to permit longitudinal sliding movements of the bogie. A hitch means connects the front end of the bogie to the rear end

of the tractor so that after the rear end of the trailer has been backed onto the bumper block, the tractor may be driven away, pulling the bogie along the tracks at the underside of the trailer and out from under the front end of the trailer. Removable jacks are provided to support the front end of the trailer after removal of the tractor and bogie, the jacks being spaced at the outer sides of the trailer to permit the bogie to be withdrawn between them.

Although Felburn's complaint alleged infringement broadly, the District Court noted that, of the four claims of patent '889, only claim 3 is here in suit. We have broken down claim 3 and added reference letters and numerals for ease of analysis:

3. A semi-trailer and tractor unit assembly comprising

A. a trailer base

1. adapted to have its forward end supported by a tractor unit removably connected thereto,

B. a wheel unit

1. adapted to support the rear portion of said trailer base whereby said base is conjointly supported by said wheel and tractor units for movement along a roadway,

2. said wheel unit having detachable connection with said trailer base for assembly therewith and disassembly therefrom,

C. the rear portion of said base

1. overhanging said wheel unit

2. and terminating in a depending cam surface

a. engageable with a load carrying platform of a vertical height slightly higher than the vertical height of said rear portion.

3. whereby the tractor unit may back said semi-trailer against said platform

a. with sufficient force to cam said rear portion upwardly to overlie said platform

b. so that the load of the rear end of said base is removed from

said wheel unit to provide for ready disassembly of the latter from said base,

D. and draft means

1. for connecting said wheel unit selectively to

   a. said tractor unit

   b. and to other means of motive power

2. for moving said wheel unit from a position underlying said trailer base.

### The '636 Patent

The '636 patent claims a method of transferring the base or bed of a semi-trailer to a railway flat car. The method is related to the '889 patent in that it can be used with detachable-bogie, tractor-trailer assemblies of the type therein described. Again, infringement was broadly alleged in the complaint, but the District Court indicated that, of the fifteen claims of the patent, only claims 1, 3, 4, 11, 12, 14 and 15 were in issue.

Claim 1 is descriptive of one embodiment of the invention and reads (reference letters and breakdown ours):

1. The method of transferring a trailer body from a trailer having a removable attached under-carriage, the trailer body having a king pin on the front end thereof and swivel means located rearwardly of the king pin cooperating with swivel means on the floor of the flat car when the two swivel means are brought into registry, also including the use of a towing vehicle, said method including the steps of

   a. backing the rear end of the trailer body upon the side of the flat car,

   b. registering the swivel means on the flat car to form a pivot,

   c. locating a towing vehicle to one side of the front end of the trailer body,

   d. attaching the towing vehicle to the front end of the trailer body and relieving the weight of the trailer body from the tractor and undercarriage,

   e. removing the undercarriage from the trailer body,

   f. supporting the trailer body solely upon the flat car and upon the towing vehicle,

   g. swinging the trailer body by the use of the towing vehicle so as to align the longitudinal axis of the trailer body with the longitudinal axis of the flat car,

   h. disconnecting the towing vehicle from the trailer body so as to support the trailer body in direct contact with and upon the floor of the flat car,

   i. and locking the king pin to the flat car to hold the front end of the trailer body in locked position upon the flat car.

From an examination of the foregoing claim, and in particular its preamble, which describes many of the structural features needed to carry out the claimed method, it seems quite apparent that the trailer assembly described and claimed in the '889 patent would serve quite well in such a system, with certain structural modifications. It would be only necessary to equip the trailer base with a swivel means, for registry with the corresponding swivel means on the flat car, and with a king pin, for locking the trailer base in place once it is positioned on the flat car.

Claims 3 and 4 are very similar to claim 1 and need not be set forth in detail. Claim 11 defines essentially the same method, but in somewhat more general terms:

11. A method of making shipments through the utilization of rail and truck transportation and involving the use of a railway flat car and a semi-trailer having a load-carrying bed detachably connected at its front end to a tractor unit and having a stable multiple axle wheel unit provided with an upper portion detachably locked in position underneath the rear part of the bed whereby the

latter is conjointly supported by said wheel and tractor units for movement along a roadway, said method including the steps of backing the semi-trailer by means of the tractor in a direction generally normal to the longitudinal axis of the railway flat car to a position wherein the rear end of said bed adjoins and is generally level with the adjacent upper surface of said flat car and wherein the rear set of wheels of said wheel unit adjoins the side of said flat car, stopping the backing movement of said tractor unit and unlocking said wheel unit from said load-carrying bed to permit relative movement therebetween, then continuing the backing movement of said tractor unit while said wheel unit is held stationary to push against the forward end of said bed and thereby move said bed smoothly over the horizontally stable upper portion of said stationary wheel unit and onto said flat car to transfer support of the load from said wheel unit to said flat car, the wheel unit by reason of its stability remaining horizontal and untilted and permitting unobstructed movement of said load-carrying bed relative to said wheel unit without considerable separation therebetween, disconnecting said tractor unit from said bed, and swinging said bed horizontally and relative to said flat car to a position wherein its longitudinal axis is generally aligned with the longitudinal axis of the flat car.

Claims 12, 14 and 15 are dependent upon claim 11 and add many of the structural details of claims 1, 3 and 4, albeit in terms of functional method "steps."

The beneficial features of the system described by Felburn should be readily apparent. A truck-borne cargo can be quickly and easily transferred for rail transport, without unloading, leaving the tractor and running gear of the semi-trailer immediately free for further service.

■ We shall consider first the issue of validity of the two patents in suit, for an affirmance of the District Court on that score would obviate the need for consideration of the infringement issue. National Transformer Corp. v. France Mfg. Co., 215 F.2d 343 (6th Cir. 1954). Cf. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945).

### Validity

■■ As a preliminary matter, we note that the District Court, in its conclusions of law numbered 8 and 9, held both patents "invalid and void for lack of novelty and patentable invention," without restricting that holding to the particular claims on which the issues were tried. We think it was error for the District Court, even impliedly, to pass upon the validity of claims which were not properly put in issue. Bain v. M. A. Hanna Co., 331 F.2d 974 (6th Cir. 1964). See also Chemical Construction Corp. v. Jones & Laughlin Steel Corp., 311 F.2d 367 (3d Cir. 1962). While a different result might well obtain where there is a claim or counterclaim seeking a declaratory judgment of invalidity of the entire patent, see Sterling Aluminum Prods., Inc. v. Bohn Aluminum & Brass Corp., 187 F.Supp. 879 (E.D.Mich.1960), aff'd 298 F.2d 538 (6th Cir. 1962) and Kawneer Co. v. Pittsburgh Plate Glass Co., 103 F.Supp. 671 (W.D.Mich.1952), we do not have that situation in the present case. Accordingly, insofar as it purports to hold invalid claims 1, 2 and 4 of the '889 patent, or claims 2, 5–10 and 13 of the '636 patent, we *vacate* the order of the District Court. Cf. Goodwin v. Carloss Co., 116 F.2d 644 (6th Cir. 1941).

The District Court found the patents in suit to be invalid for lack of "novelty" *and* "patentable invention." The statutory bases for such a finding are 35 U.S.C. §§ 102 and 103. In the view we take of the case, however, there appears to be novelty in the semi-trailer and tractor assembly defined in claim 3 of the '889 patent and in the method defined

in claims 1, 3, 4, 11, 12, 14 and 15 of the '636 patent, when tested according to the provisions of section 102. That is to say, the inventions claimed in these claims are not "identically disclosed" in the prior art of record. We have arrived at this conclusion after an examination of the cited prior art in the light of the testimony herein and after giving due weight to the findings of fact which were proposed by the defendants and adopted by the trial court.

Thus, the District Court, in its Finding of Fact No. 14, found:

14. The entire combination recited in Claim 3 of the '889 patent is applicable to the conventional semi-trailer combinations with sliding bogies which were in prior use, except for the following two allegedly novel elements:

A. A "depending cam surface" at the rear portion of the trailer base engageable with a load carrying platform of a vertical height slightly higher than that of said rear portion whereby the tractor unit may back the trailer base against the said platform with sufficient force to cam said rear portion upwardly to overlie said platform so that the rear end of the trailer base is removed from the bogie.

B. Draft means for connecting the bogie to the tractor for moving the bogie "from a position underlying said trailer base".

In Finding of Fact No. 56, the court stated:

56. All of the steps recited in Claims 1, 3, 4, 11, 12, 14 and 15 of the '636 patent were old, having been disclosed in prior patents and publications, in which they were employed in essentially the same way and for the same purpose. No new or unexpected result was achieved by Felburn's combination of these old steps into the methods claimed, and no ingenuity beyond that of an ordinary mechanic was involved in making such combination.

These findings seem, by their very terms, to require the conclusion that the claims are not invalid for want of *novelty* under section 102.

However, novelty alone will not support validity of the claims. Section 103 provides, in pertinent part, that:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *

Patents when issued by the Patent Office are "presumed valid" (35 U.S. C. § 282). Where, however, what we consider to be pertinent prior art was not before the Patent Office, the presumption of validity does not apply with respect to such prior art. Royal Patent Corp. v. Monarch Tool & Mfg. Co., 203 F.2d 299 (6th Cir. 1953).

As to claim 3 of the '889 patent, the McGregor U. S. Patent No. 2,543,295 was not cited by the Patent Office, although, despite the contrary statement in the District Court's Finding of Fact No. 60, this patent was cited as a reference against the application which matured into the '636 patent. Thus, as to the '889 patent, there is no presumption of the validity of claim 3 over the McGregor patent.

We think the pertinent facts concerning the McGregor patent disclosure were properly stated in the District Court's Finding of Fact No. 50, which reads as follows:

McGregor discloses a semi-trailer and tractor unit assembly including a trailer with its forward end removably supported by a tractor unit, and with a wheel unit adapted to support the rear portion of said trailer whereby the trailer is conjointly supported by the wheel and

tractor units for movement along a roadway, the wheel unit being detachable from the trailer. The rear portion of the wheel unit terminates in a depending cam surface which is engageable with the load carrying platform of a vertical height slightly higher than that of said rear portion, whereby the tractor may back the trailer and wheel unit assembly against the platform with sufficient force to cam the rear portion upwardly to overlie the platform to provide for ready disassembly of the wheel unit from the trailer. McGregor also shows draft means connecting the wheel unit to the tractor for moving the wheel unit from a position underlying the trailer.

While there admittedly are verbal differences between the structure called for in claim 3 of the '889 patent and structure disclosed in the McGregor patent, we agree with the District Court's Finding of Fact No. 52 that:

> The result accomplished by the operation of McGregor's system is identical with that of the Fellabaum[3] '889 patent. McGregor leaves the trailer with its rear end supported at the edge of a loading platform and with its front end supported upon supporting legs, exactly as Fellabaum does.

It must be remembered that the technological art with which we are here concerned is highly developed, as indicated by the large number of prior art patents which have been cited. One of ordinary skill in this art could draw from the works of many prior patentees in the field. Thus, we agree with the portion of the District Court's Finding of Fact No. 48 that states:

> All of the elements recited in Claim 3 were old, having been employed in the freight handling systems disclosed in prior patents, in which they functioned in the same way and for the same purpose. * *

In addition to the McGregor patent teachings, one of ordinary skill in this art would have had before him the knowledge disclosed in the Menning U. S. Patent No. 2,151,640, the Zubatsky U. S. Patent No. 2,369,384 and the Alexander U. S. Patent No. 2,038,156. All these patents issued long prior to the date when the invention of patent '889 was made. Thus, the issue to be decided is solely whether the differences between the invention *as claimed* in claim 3 of the '889 patent and the prior art are such that the invention as a whole would have been obvious to one of ordinary skill in this art under the conditions stated in 35 U.S.C. § 103. What slight differences there may be between the structure defined by the language of claim 3 of the '889 patent and that shown in the McGregor patent are such that in our opinion the invention of claim 3 taken as a whole would have been obvious in view of the disclosures of the additional patents, which were cited as references against the application which matured into the '889 patent. We find the factual support for this conclusion stated in the District Court's Findings of Facts Nos. 53 and 55:

> 53. The Menning U. S. Patent No. 2,151,640, which was issued in 1939, discloses a truck supporting a removable cargo body. The rear end of the cargo body is adapted to engage a cam surface on a bumper block at the edge of a loading platform, whereby the truck can back the cargo body against the cam surface and cam it up onto the loading platform to remove its weight from the truck. Then the truck can drive away, leaving the rear end of the cargo body supported by the load carrying platform and its forward end supported by jacks. Thus, the end result accomplished by Menning is identical with that accomplished by Fellabaum in his '889 patent system.

3. See fn. 1, supra.

55. There was nothing novel about either a truck and semi-trailer combination or a separate hitch. A semi-trailer assembly with a slidable bogie is shown by the prior Zubatsky U. S. patent No. 2,369,384 issued in 1945, while the hitch means is shown by the prior Alexander U. S. patent No. 2,038,156 issued in 1936.

We therefore agree that claim 3 of the '889 patent is invalid on the basis that it does not meet the conditions for patentability specified in 35 U.S.C. § 103. We therefore amend the District Court's conclusion of law No. 8 to read as follows:

8. Claim 3 of Patent No. 2,693,889 is invalid as not meeting the conditions for patentability specified in 35 U.S.C. 103.

The statutory presumption of validity as to claims 1, 3, 4, 11, 12, 14 and 15 of the '636 patent is rebutted by the fact that pertinent prior art was not before the Patent Office in connection with the applications which resulted in the '636 patent. Here we refer particularly to the Winn U. S. Patent No. 1,541,457 issued in 1925 and to the evidence of the Behrens work in this field. With respect to the Winn patent, we agree with the District Court's Finding of Fact No. 57:

57. The Winn U. S. patent No. 1,541,457, issued in 1925, was not cited by the Patent Office against any of the applications for the '636 patent. It discloses a semi-trailer and tractor assembly in which the front end of the trailer bed is detachably connected to the tractor through the semi-trailer frame with a multiple axle wheel unit supporting the rear portion of the trailer bed. Winn further discloses the loading of the cargo bodies onto a railroad car having turntables rotatably mounted thereon by the successive steps of: rotating the turntables to a position transverse of the railroad car, backing the trailer by means of the tractor until it is adjacent the side of the railroad car, unlocking the cargo bodies from the wheel unit, pushing the cargo bodies smoothly over the wheel unit and onto the railroad car, and rotating the turntables and cargo bodies to a position parallel to the railroad car.

Referring to claim 11 of the '636 patent as representative, it will be seen that Winn discloses everything there claimed except (1) the use of a conventional "flat car," (2) the backing of the cargo bodies into actual contact with the railroad car, and (3) the use of the tractor for pushing the cargo bodies onto the rail car.

When, however, we consider that the teachings of the prior Zubatsky U. S. Patent No. 2,369,384 had been available since 1945 and the teachings of the prior McGregor U. S. Patent No. 2,543,295 had been available since 1951, we think it would have been obvious for one of ordinary skill in this art to add to the method described by Winn the operative steps described by Zubatsky and McGregor. Thus Zubatsky discloses the step of using a tractor to push a trailer from its removable bogie onto a conventional flat car, while as previously pointed out, McGregor discloses the backing of the trailer of a semi-trailer and tractor assembly by the tractor in a direction generally normal to the axis of a rail car until the rear end of the trailer adjoins and is generally level with the rail car and the wheel unit adjoins the side of the rail car. Then the wheel unit is unlocked from the trailer, and the trailer is slid onto the rail car by movement of the tractor, the wheel unit being simultaneously pulled from beneath the trailer. The trailer is then rotated on the turntable to a position in which its longitudinal axis is parallel to the longitudinal axis of the railroad car.

Details of the method of the '636 patent covered in the other claims in suit are found in other references of record which were available at the time Felburn made the invention of the '636 patent. We think this aspect of the case was

correctly stated by the District Court in its Findings of Fact Nos. 63 and 64:

63. The additional step of registration of swivel means on a trailer with swivel means on a railroad car to form a pivot for rotation of the trailer to a position parallel to the car, as recited in Claims 1, 3, 4, 14 and 15 of the '636 patent, was not new, but is disclosed in the prior Ross U. S. patent No. 1,734,303 issued in 1929, and in the prior Francis U. S. patent No. 1,968,196 issued in 1934.

64. The additional steps of attaching a towing vehicle to one side of the front end of the trailer bed and using the towing vehicle to swing the trailer bed to a position parallel to the flat car, as recited in Claims 1, 3, 4 and 12 of the '636 patent, were not new, but are disclosed by a number of prior patents including the aforementioned Francis patent, the Nelson U. S. patent No. 2,782,054 issued in 1957 on an application filed in 1953, and the Gutridge U. S. patent No. 2,819,687 issued in 1958 on an application filed in 1953.

We recognize and have considered appellant's arguments against such use of these references. It is difficult in the usual case, in applying the test Congress has enunciated in 35 U.S.C. § 103, to avoid the charge of a "hindsight" reconstruction of the art. See, e. g., In re Seevers, 346 F.2d 602, 52 CCPA —— (1965). Here, however, we have the advantage of the Behrens testimony and disclosure which, while not a technical "anticipation" of the '636 patent under section 102, is, we think, pertinent evidence bearing upon what a person of ordinary skill in the art could be expected to evolve without having knowledge of the Felburn invention.

■ Under the circumstances of this case we think it would be gross error to rely solely upon our own speculation as to what the art taught one of ordinary skill at the time Felburn made the invention of the '636 patent, when we have the advantage of considering what Behrens did. Judge Learned Hand, referring to the tests required under 35 U.S.C. § 103, in Reiner v. I. Leon Co., 285 F.2d 501 (2d Cir. 1960) stated:

The test laid down is indeed misty enough. It directs us to surmise what was the range of ingenuity of a person "having ordinary skill" in an "art" with which we are totally unfamiliar; and we do not see how such a standard can be applied at all except by recourse to the earlier work in the art, and to the general history of the means available at the time. To judge on our own that this or that new assemblage of old factors was, or was not, "obvious" is to substitute our ignorance for the acquaintance with the subject of those who were familiar with it. There are indeed some sign posts: e. g. how long did the need exist; how many tried to find the way; how long did the surrounding and accessory arts disclose the means; how immediately was the invention recognized as an answer by those who used the new variant? * * *

Behrens testified before the District Court, and we think substantial weight should be given to the District Court's Finding of Fact No. 65 concerning it. No. 65 states:

Rudolf Behrens, the proprietor of a German trucking firm, published a brochure disclosing a freight handling system which is virtually identical to that described in the broadest claims of the '636 patent. The first edition of this brochure was printed in June 1955 and was mailed out during the latter part of 1955. The second edition was sent out shortly thereafter, with all the mailing being completed within four months after December 1955, before the filing date of Felburn's first application for the '636 patent. One or the other of these two versions of the publication was sent to one hun-

dred firms in Europe and to forty-two firms in the U. S. A., including the leading manufacturers of trucks and trailers, railroads and trucking companies.

We are not here concerned with the Behrens brochure as a technical "publication" under section 102. Rather, our concern is solely with what the Behrens testimony and brochure establish as the independent development of one skilled in this art. It seems clear from the Behrens testimony that prior to the filing date of the '636 patent, he had disclosed an independent development which embodied the method claimed in the claims in issue of the '636 patent. Standing alone, there is danger in the acceptance of such evidence as being conclusive on the issue of obviousness under section 103. When, however, it is considered in the context of the present record as a whole, we think it is both pertinent and helpful to the court despite the admitted question as to whether the brochure qualifies as a publication under section 102—an issue which we do not here pass upon. Instead, we find in Behrens' testimony *and* the brochure credible evidence of an independent development of the subject matter of the '636 patent by a third party, which we here regard as persuasive that the claimed invention would have been obvious to one of ordinary skill in this art. See Lempco Prods., Inc. v. Simmons, 140 F.2d 58 (6th Cir. 1944).

The evidence of Behrens' activity was not before the Patent Office during the pendency of the several applications which finally resulted in the issuance of the '636 patent. The pertinency of such activity is apparent from the District Court's Finding of Fact No. 67:

> 67. The Behrens publication illustrates a semi-trailer and tractor assembly in which the bogie is slidable along the bottom of the trailer and removable therefrom for loading of the trailer onto a conventional railroad flat car. The trailer is backed up by the tractor transverse-ly of the flat car to a position wherein the rear end of the trailer adjoins and is generally level with the upper surface of the flat car. At this point, the trailer is unlocked from the bogie to permit sliding of the bogie along the undersurface of the trailer. Then the backing of the tractor is resumed to push the rear end of the trailer onto the turntable. The rear end of the bogie engages the side of the flat car to prevent movement of the bogie as the trailer is slid onto the flat car. In one embodiment, shown in Figure 2 of the drawings of the publication, the trailer is pushed to a position wherein it is centered over the flat car. Thereupon, the front end of the bogie is connected to the rear end of the tractor by means of a hitch and the bogie is pulled by the tractor from beneath the trailer. Then the trailer is rotated to a position parallel to the freight car.

Our only comment on the above finding is that we are not considering Behrens' brochure as a "publication" meeting the technical requirements of section 102. The brochure illustrates and describes Behrens' knowledge of the problems to which Felburn addressed himself in the '636 patent and Behrens' independent solution thereof. Here, also, we are not concerned with whether Felburn or Behrens was the first inventor of the same invention, hence we are not concerned with whether or not Felburn reduced his invention to practice before Behrens did. We repeat, lest there be any future confusion as to our position on this matter, that we consider the evidence of the Behrens activity as a part of the record as a whole on the single issue of obviousness under the conditions specified in 35 U.S.C. § 103. Even if we accept the unsupported and uncorroborated testimony of Felburn that he made the models (Plfs. Ex. 10–14) "in the summer of 1954," this does not change the fact that the art was already highly developed at that time, as evidenced by

the numerous earlier patents to which we have previously referred. It seems clear to us that when Felburn and Behrens, working independently, attacked the same problems at about the same time and arrived at the same solutions it is *some evidence, cumulative to be sure,* which supports our view that the ordinary skills in this art were such that the invention patented in the '636 patent would have been obvious to the hypothetical person postulated in section 103 and under the conditions stated therein.

We agree with the decision of the District Court that claims 1, 3, 4, 11, 12, 14 and 15 of the '636 patent are invalid but we do so solely on the basis that they do not meet the conditions for patentability specified in section 103. We therefore amend the District Court's Conclusion of Law No. 9 to read as follows:

9. Claims 1, 3, 4, 11, 12, 14 and 15 of Patent No. 3,002,636 are invalid as not meeting the conditions for patentability specified in 35 USC 103.

In the view we have taken of this case, it is not necessary to pass upon the issues of infringement tried below. There can be no infringement of an invalid patent. National Transformer Corp. v. France Mfg. Co., supra.

*Summary*

For the foregoing reasons, the conclusions of law of the District Court are modified in the following particulars:

1. The determination of invalidity is restricted to the claims in issue, i. e., claim 3 of the '889 patent and claims 1, 3, 4, 11, 12 14 and 15 of the '636 patent, and

2. The claims in issue are invalid as covering inventions which we find do not meet the conditions for patentability set forth in 35 USC 103.

When so modified, the judgment is affirmed. See Goodwin v. Carloss Co., supra.