**ARMCO STEEL CORPORATION,**
Plaintiff,

v.

**UNITED STATES STEEL CORPORA-
TION, Defendant.**

**Civ. A. No. 10550.**

United States District Court
W. D. Pennsylvania.

Jan. 26, 1962.

As Amended March 27, 1962.

Jo. Baily Brown and Fulton Flick, of Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa., and Gibson Yungblut, of Yungblut, Melville, Strasser & Foster, Cincinnati, Ohio, for plaintiff.

Elder W. Marshall, of Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Theodore S. Kenyon and Malvin R. Mandelbaum, of Kenyon & Kenyon, New York City, and Donald G. Dalton, Pittsburgh, Pa., of counsel, for defendant.

JOHN L. MILLER, District Judge.

This is an action to recover damages for the alleged infringement of United States Patents No. 2,110,893 dated March 15, 1938 (hereinafter referred to as the '893 patent), No. 2,136,957 dated November 15, 1938 (hereinafter referred to as the '957 patent) and No. 2,197,622 dated April 16, 1940 (hereinafter referred to as the '622 patent) relating to the coating of one metal with another

metal by dipping the base metal in a bath of molten coating metal. Defendant denies any infringement and claims that the three patents, all in the name of Tadeusz Sendzimir as inventor, are invalid. Upon careful consideration of all of the evidence presented, and the briefs and oral argument of counsel, the Court is of the opinion that the Sendzimir patents are invalid. Assuming the validity of the patents, the Court is of the further opinion that the defendant has not infringed the patents in suit. However, this defense will not be discussed, since the Court's finding of invalidity is completely dispositive of the case.

The '893 patent describes a process for metal coating which consists in first oxidizing the metal body to be coated to produce on its surface an oxide film of specific character and thickness, then passing it through a reducing furnace to convert the film to pure metal, then passing the metal body into a bath of the coating metal through a snout which prevents re-oxidation of the surface before it enters the coating bath. Claim 1 of the '893 patent, selected by counsel as typical, consists of four elements; oxidizing, reducing, protecting and dipping. Admittedly, every detail of the last three steps, reducing, protecting and dipping, had been patented or described in a printed publication in the prior art. The sole claim to novelty in the Sendzimir process, therefore, relates to the specific details of the oxidizing step. During the prosecution of his applications, Sendzimir attempted to obtain claims in which the oxide or other reducible film or coating was specified merely as "thin, uniform and controlled." However, in order to obtain allowance of the patent he amended his claims to specify "a thickness comparable to the thickness of an oxide film which, when formed upon iron or steel, would vary in appearance from light yellow to purple and as far as gray." This oxidizing step, which produces a uniform film of such thickness as to give the appearance of a temper color, was defined by a witness for the plaintiff as "controlled oxidation."

However, the prior art clearly discloses every detail of the alleged invention. Cowper-Coles United States patent No. 979,931, a reference cited by the Patent Office Examiner shows explicitly the reducing, protecting and dipping steps of the claims as applied to iron sheets or wire which already carry on their surface an oxide or scale. It does not show a deliberate preliminary oxidation of the sheet or wire before treatment nor does it state exactly the thickness of the oxide or scale which is removed prior to galvanizing. The Examiner did not withdraw his objection to this patent until each of the claims was amended to specify the temper color limitation.

Cowper-Coles British patent No. 23,181 of 1908, also a file reference, likewise discloses every feature of the '893 claims except the specific limitation of thickness of the oxide layer in terms of temper color. One of plaintiff's principal arguments in the Patent Office against the pertinency of the Cowper-Coles patents, i. e., that the presence of scale will not permit satisfactory galvanizing, was demonstrated at the trial to be false. Seven coils of strip bearing a mill scale on its surface were galvanized on one of defendant's lines by the very same process and in the same apparatus as that alleged to infringe the patents in suit. The finished galvanized product had a normal appearance, was sold commercially and satisfactorily passed severe bending tests.

Cowper-Coles British patent No. 28,636 of 1907 was not a file reference. It corresponds in general to the disclosure of the other two Cowper-Coles patents but adds the important element of "controlled oxidation." This term is employed by plaintiff to define its oxidation step. At the trial, on cross-examination, a witness for the plaintiff admitted that this Cowper-Coles patent shows "controlled oxidation" just as in the '893 patent. This then is an acknowledgement of complete anticipation of all four steps of the claims in suit.

Coffin United States patent No. 399,382 was a file reference. While the Ex-

aminer was led to believe that there was no oxidation of the wire after its passage through the cleaning bath and before it entered the annealing bath, the evidence presented at the trial indicates that Coffin does teach a controlled oxidation.

Naugle United States patents Nos. 1,-714,040 and 1,721,351, the latter of which issued to plaintiff's predecessor, the American Rolling Mill Company, were not file references. They disclose the steps of controlled oxidation, annealing in a reducing atmosphere and protecting as defined in the Sendzimir claims. They plainly suggest the dipping step as well.

Guthrie patent No. 1,815,505 was not a file reference. It is addressed to the bright annealing of metals and involves the steps of first deliberately oxidizing the strip, then reducing the oxide by means of a reducing gas and finally cooling the strip while still protected by the reducing gas. The testimony at the trial clearly established that the Guthrie patent is a complete anticipation of Sendzimir's steps of controlled oxidation, reducing and protecting, in order to provide a metal which is soft enough for later working, shaping and drawing.

■ None of the prior patents referred to above were file references against '893 in the Patent Office except for the first two Cowper-Coles patents and the Coffin patent. The presumption of validity referred to in 35 U.S.C. § 282 relates only to validity over patents or publications cited as references by the Patent Office Examiner. The presumption is considerably weaker as to patents or publications not cited as references. Scripto, Inc. v. Ferber Corporation, 267 F.2d 308 (3rd Cir.1959); Dole Refrigerating Company v. Amerio Contact Plate Freezers, Inc., 265 F.2d 627, 629 (3rd Cir.1959). Cowper-Coles British patent No. 28,636 of 1907 contains all of the elements of the claims including controlled oxidation. The Naugle patents and Guthrie show controlled oxidation for just the purpose described by Sendzimir, namely, to remove grease and to provide a reducible film which is then chemically reacted with the reducing gas

to form a film of pure metal on the strip surface. The chemical reaction between the reducing gas in the annealing furnace and oxide on the strip (whether the oxide already exists there or is deliberately put there) had been common knowledge of the art from at least the time of Cowper-Coles, and was embodied in modern high-speed continuous annealing furnaces by the time of the Naugle and Guthrie patents shortly before Sendzimir's alleged invention.

■■ Nor can plaintiff rely on the commercial success of its operations. "Evidence of commercial success or the lack of it is frequently of value, but resort to it may not be had unless the question of invention or anticipation is otherwise really in doubt and then only where causes other than the invention itself can be eliminated so that one may say that the thing claimed and nothing else is what made the patent successful." Girdler Corporation v. Abbotts Dairies, Inc., 24 F.Supp. 551, 557 (E.D.Pa.1938) affirmed per curiam 106 F.2d 998 (3rd Cir.1939). See also Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Kissock v. Duquesne Steel Foundry Co., 37 F.2d 249, 251 (3rd Cir.1930). Where, as here, the alleged invention is a process involving the use of newly available materials and mechanisms and controls which are entirely outside of the alleged invention, owing nothing to the alleged inventor or his patent, the doctrine is inapplicable because commercial success is attributable to factors other than the alleged invention in suit. Lovell Manufacturing Company v. Cary, 147 U.S. 623, 13 S.Ct. 472, 37 L.Ed. 307 (1893).

■ Not only is the '893 patent invalid over the prior art, it also is fatally indefinite. Section 112 of Title 35 U.S.C. provides: "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." The very purpose of requiring claims in addition to the written description is to provide a

measure of the metes and bounds of the asserted monopoly so that the public may know definitely the boundary line between the public domain and the private monopoly of the patentee. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 368–369, 58 S.Ct. 899, 82 L.Ed. 1402 (1938). If the terms of the claim are ambiguous or doubtful, the claim is invalid. United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 237, 63 S.Ct. 165, 87 L.Ed. 232 (1942). In attempting to establish infringement on the part of the defendant, plaintiff has ignored the temper color limitation and has asserted that *all* steel is yellow because it has the same dominant wave length as the spectral color yellow without regard to the fact that it does not look yellow and that its other colorimetric measurements place it in a zone nominally classified as "light gray" and below the lowest limit of the zones defining yellowish gray or grayish yellow. If, as plaintiff contends, the claims are not so limited, then they are invalid for indefiniteness.

Similarly, the '957 patent is invalid. The claims of the '957 patent are couched in terms of "means" or apparatus for performing the process steps of the '893 patent. Thus the claim calls for means for oxidizing, means for reducing, means for dipping and means for protecting. Each of the patents referred to above, however, discloses means for the process taught. The Naugle patents, neither of which was a file reference, show every piece of apparatus in precisely the same form and relationship as they are claimed in the patents in suit. Accordingly, the Court concludes that the '957 patent is anticipated and invalid.

The '622 patent is likewise invalid over the prior art. The specification of this patent, although in different language, describes precisely the same process and apparatus as the '893 and '957 patents with one single addition, namely, the use of a pinch of aluminum in the zinc bath. Both Cowper-Coles and Coffin show the strip or wire being led in a flux-free condition beneath the flux-free surface of a bath of zinc. Moreover, every ad-

vantage of the use of aluminum in the bath was fully recognized and described in prior patents and publications. Richards United States patent No. 456,204 ·disclosed these advantages. Several publications, including Galvanizing, by Bablik, 1926; Protective Metallic Coatings, by Rawdon, 1928; The Scientific American Cyclopedia of Formulas, 1911; and The Iron Age, "European Hot Sheet Galvanizing" by Bablik, 1929, the latter two of which were not file references, disclosed not only the specific ranges of the amount of aluminum content but also every advantage referred to in Sendzimir's specification.

Counsel for defendant shall submit detailed findings of fact, conclusions of law and an appropriate judgment in accordance with this Opinion.