The **BENDIX CORPORATION**, Plaintiff,

v.

**FREELAND GAUGE COMPANY,**
**Defendant.**

**Civ. No. 25567.**

United States District Court
E. D. Michigan, S. D.

June 23, 1967.

Whittemore, Hulbert & Belknap, Detroit, Mich., for plaintiff, Chas. H. Howson, Jr., John W. Logan, Jr., Howson & Howson, Philadelphia, Pa., of counsel.

Cullen, Sloman & Cantor, Detroit, Mich., for defendant.

## OPINION

KAESS, District Judge.

Plaintiff, The Bendix Corporation[*] a corporation of the State of Delaware, seeks an injunction and damages against Freeland Gauge Company, a Michigan corporation, for alleged infringement of Claims 9–13 and 15 of its Aller Patent No. 2,593,957. Jurisdiction and venue have been admitted.

Defendant asserted the patented claims to be invalid for "obviousness" under the Patent Statutes, 35 U.S.C. § 103, as well as because the claims attempt to "recapture the monopolies surrendered upon the expiration of certain earlier Aller patents owned by plaintiff."

The patent-in-suit, Aller '957, is the last in a series of four patents which relate to air gages.

The first of the four Aller patents, No. 2,254,259, granted September 2, 1941 and expired September 2, 1958, describes and claims an air gage, which includes a vertical, tapered glass tube containing a movable indicator float, with the smaller, bottom end of the tube connected by a pipe to a source of compressed air and an air pressure regulator, and the larger, upper end connected by a pipe to an air leakage spindle. The spindle may be formed to fit into a hole in a workpiece for internal gaging, or may be formed to surround a workpiece for external gaging. In either case, the spindle is spaced a short distance from the workpiece surface and air leaks from a hole in the spindle into the space. The amount of air leakage determines the position of the indicator float within the glass tube. That is, a large amount of air leakage results in a large air flow in the tube which raises the float higher, and vice versa. By first determining the leakage, and thus the float position, for a properly sized "master" workpiece, other workpieces may be gaged to produce the same or more or less air leakage, which causes the float to move. The float position indicates that the part being gaged is the same as or over or undersized relative to the master.

The air gage of this expired '259 patent was marketed by plaintiff for many years and seems to have been an important and significant advancement in the gaging art, which includes other types of gages, such as back-pressure gages, electrical and mechanical gages.

The second of the four patents, Aller, No. 2,370,219 granted February 27, 1945 and expired February 27, 1962, added to the basic air gage of the first Aller patent '259, a so-called adjustable "by-pass" or "shunt", whose purpose was to by-pass some of the air around the glass tube to the spindle. As in the '259 patent, the float moved in accordance with the amount of air flowing through the glass tube, but with such movement now being proportional to the total amount of air flow in both the tube and the by-pass together. This enabled the gage to be used for a wider or larger range of air flow, making it more versatile.

The third of the four patents, Aller, No. 2,403,897, granted July 16, 1946 and expired July 16, 1963, added to the basic air gage of '259, a so-called adjustable "bleed", which involves a relief valve located between the large end of the glass tube and the spindle for releasing or "bleeding" part of the air flow to atmosphere before it reaches the spindle, but after it passes through the tube. By such air bleed, the starting position of the indicator float in the glass tube may be adjusted or "zeroed", since the air flow through the tube may be increased to move the float upwardly, without increasing the spindle leakage. This "zeroing" or positioning adjustment also made the air gage more versatile.

---

[*] The original plaintiff, the Sheffield Corporation, merged into and did become a division of the Bendix Corporation.

These first three Aller patents expired before the alleged infringing activities of defendant.

The fourth patent, Aller, No. 2,593,957, granted April 22, 1952, is the one in suit. It claims as its invention the inclusion of *both* adjustments, the "by-pass" of the expired '219 patent and the "bleed" of the expired '897 patent, in the gaging system of the basic air gage of the first, also expired, '259 patent.

Defendant contends (1) that the addition of *both* adjustments to the basic air gage was "obvious", and (2) that since the addition of *either* adjustment to the basic gage was in the public domain due to the expirations of their respective patents, a patent purporting to monopolize the addition of *both* adjustments to the same basic air gage was an attempt to extend or "recapture" the monopolies of the expired patents, and therefore, is unenforceable and void. This Court agrees with both contentions.

■ As to "obviousness", Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545, states:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined."

Here, the prior art includes plaintiff's three expired patents which disclose the basic tapered tube, air flow gage system, with either of the two by-pass or bleed adjustments added thereto.

■ The claims-in-suit differ from these expired patents only in combining both adjustments in the basic flow gage system.

Even that difference is foreshadowed by the prior knowledge of the gaging art which includes many old patents showing various types of gages, such as mechanical, electrical, liquid flow, etc., combined with *both* by-pass or shunt and indicator zeroing adjustments. Structurally, these may differ from the air flow gage in suit, since they handle different flow mediums, such as electricity vs. air. Nevertheless, the Court may not blind itself to the fact that they disclose the concept and desirability of combining two adjustments within one gage. Monroe Auto Equipment Co. v. Heckethorn Mfg. and Supply Co., CA 6, 1964, 332 F.2d 406, 413; Cert. den. 379 U.S. 888; 85 S.Ct. 160, 13 L.Ed. 2d 93. Allied Wheel Products. Inc. v. Rude, CA 6, 1953, 206 F.2d 752, 756. Considering these old patents, there are no essential differences between the prior art and the claims at issue.

The level of skill in the gaging art is high and those skilled in the art seem to have been conversant with the various types of gages and adjustments available. The patentee Aller, as well as others in plaintiff's employ, published numerous articles which described and equated the various types of gages which make up the branches of the gaging art.

These publications clearly indicated the high level of skill and knowledge of those skilled in the art as to the uses and relationships between the various types of gages, and the similarities of function, purpose and relationships of the various gaging adjustments.

Measured against this kind of background, the Court reaches its conclusion that the claimed subject matter is obvious.

■ Perhaps it should be added, even absent the prior art suggesting combining adjustments with other types of gages, this Court concludes that it would have been obvious to add together the two adjustments, each of which was separately known, to improve the versatility of an air gage, in order to take advantage of and utilize the benefits of both improvements to produce an even better and more versatile gage. Merely because Aller was the first to do this, does not endow such combination with inventiveness and thus be subject to patent protection. American Air Filter Company, Inc. v. Continen-

tal Air Filters, Inc., C.A.6, 1965, 347 F.2d 931.

Plaintiff contended that combining both improvements gave even more versatility than either adjustment gave alone and there is merit to its contention. However, the test for patentability is "obviousness", not increased versatility. See *Graham*, supra.

Plaintiff introduced evidence of large sales in an effort to show "commercial success". Such evidence was not specifically related to the subject matter of the claims in suit, but rather appears to have resulted from many factors, such as many other patents, other improvements, sales efforts, advertising and the like, all to plaintiff's merit. However, it was not necessarily relevant to prove merely commercial success. Even if it were, "commercial success" based on large sales is not the test of patentability. Graham, supra, 383 U.S. p. 17, 86 S.Ct. 684.

Having determined the subject matter of the claims in suit to be "obvious", this Court holds Claims 9–13 and 15 to be invalid.

Furthermore, as to the "recapture" defense, which is of concern to this Court, the law seems clear that a patent may not be issued which restricts the free use of knowledge which is in the public domain. Scott Paper Co. v. Marcalus Manufacturing Co., Inc., 326 U.S. 249, 255–256, 66 S.Ct. 101, 90 L.Ed. 47; Graham, supra, 383 U.S. p. 6, 86 S.Ct. 684. Here, the first three Aller patents having expired, their subject matters passed into the public domain and are freely available. Thus, the public, including defendant, is free to use the basic air gage of the first patent, the combination of a by-pass added to the basic air gage and the combination of a bleed added to the basic air gage. The patent-in-suit purports to monopolize the adding of both the bleed and by-pass at the same time to the basic gage. The Court concludes that this, in effect, restricts the use of knowledge which is in the public domain and seeks to extend or "recapture" monopolies sur-

rendered upon expiration of the three earlier patents.

Graham, 383 U.S. page 10, 86 S.Ct page 690 quotes Thomas Jefferson as follows:

"A man has a right to use a saw, an axe, a plane separately; may he not combine their uses on the same piece of wood?"

Jefferson's analogy seems somewhat apt here. Thus, it is concluded that the patent-in-suit is unenforceable and invalid on this ground.

Having determined the patent-in-suit to be invalid, there is no need to treat the subject of infringement, which has been complicated by expressions of both parties that their commercial products have been copied by the other. If so, copying by either is irrelevant. United States Gypsum v. Consolidated Expanded Metal Cos., 6 Cir. 1942, 130 F.2d 888, 889-890.

This opinion shall serve as the Court's findings under Rule 52.

Hence, the Court enters its order dismissing the complaint because of invalidity of the claims-in-suit, with costs to defendant, but with each side to bear its own attorney's fees.