The **CLEVELAND FABRICATING COMPANY, Inc.**, and American Lamotite Corporation, Plaintiffs,

v.

**ADSURE, INC.**, Defendant.

Civ. A. No. C 65–768.

United States District Court
N. D. Ohio, E. D.
Dec. 20, 1968.

---

Donald A. Teare, Teare, Teare & Sammon, Cleveland, Ohio, for plaintiffs.

H. F. McNenny, Clay Mock, Arter, Hadden, Wykoff & VanDuzer, Cleveland, Ohio, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONNELL, District Judge.

This case having come on for trial, and post trial proposed findings of fact and conclusions of law having been submitted by both parties, we make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. This is an action for the declaratory judgment of invalidity of Patent Nos. 3,121,649 and 3,307,306 and for attorneys' fees.

2. A justiciable controversy and venue are stipulated. Pretrial Order.

3. Plaintiff, The Cleveland Fabricating Company, Inc., is a manufacturer of insulation blankets and is charged with infringement of the patents in suit, and was sued by Defendant in the United States District Court in Houston, Texas. A motion to transfer the Texas case to Cleveland was made and the present action was then filed and the Houston case subsequently dismissed.

4. Plaintiff, American Lamotite Corporation, is a manufacturer of adhesive tape and is charged in the Counterclaim with infringement of the patents in suit.

5. Defendant, Adsure, Inc., is the owner of the patents in suit.

6. Plaintiffs allege that Patents 3,121,649 and 3,307,306 are invalid under 35 U.S.C. § 103, inter alia.

7. The method steps of the claims of Patent No. 3,121,649 would be obvious to one of ordinary skill in the art in view of the combination of the steps of the prior art stapling method (Oliver Tr. 458-459) with the sealing step of the Preisler prior art patent (PX49-52).

8. The steps of the claims of the method Patent No. 3,121,649 of stretching the first blanket over a frame, applying sheeting over the blanket, stretching a second blanket in abutment with the first blanket, then sealing the tab of the blanket before applying the final sheeting were actually known by the alleged inventor Oliver prior to his alleged discovery. (Oliver Tr. 458-459). Such steps were not disclosed to the Patent Office. (Domholdt Tr. 523-524.)

9. The use of a pre-applied adhesive for sealing the tabs of adjacent insulation bodies is taught by Preisler, French patent, Figs. 1, 2 and 7. (PX50, PX51, PX52) page 3, par. 2, 11. 5-12 (PX49). Preisler was not cited by the Patent Office in the prosecution of the method patent No. 3,121,649.

10. The combination of the Preisler prior art patent with the prior art stapling method would be obvious to one of ordinary skill in the art because of the facts in Findings of Fact Nos. 11 to 15 and 19 to 23, individually and in combination.

11. The Parker Patent No. 2,913,104 (PX58) which issued on November 17, 1959, specifically teaches the substitution of a pre-applied pressure-sensitive adhesive for staples to achieve a vapor barrier seal on an insulation blanket used on a building. (PX58, Parker Patent No. 2,913,104, Col. 3, lines 16–26 and lines 30–40.) Parker was not relied on by the Examiner against the method claims.

12. The Preisler reference performs in the combination as it performs outside it. Outside the combination, the Preisler reference seals the projecting tabs of adjacent insulation bodies after the bodies have been put in place. (Fig. 7 of PX50, 52; Hoover Tr. 277–279). In the combination, the same function is performed.

13. The steps of stretching blankets in abutment prior to sealing are not surprising since in the prior art methods of sealing by hand gluing, as well as that of stapling, the blankets were stretched in place in abutment prior to sealing. (Oliver Tr. 458; Heinlein Tr. 153).

14. The stapling method and the Preisler reference (PX51) both singly and in combination are more closely related to the claims than the art before the Patent Office and, hence, the presumption of validity is weakened as to Patent No. 3,121,649. The file history (PX47) of Patent 3,121,649 (PX32) indicates at page 47 that the method claims were rejected *only* on Leibrook (Patent No. 3,003,289—PX58). (Hoover Tr. 311) Claims 7–16 of the file history were the original method claims. (PX47, pages 15–22). In responding to the rejection, Oliver's attorney argued that the roofing shingle of Leibrook did not have a lip, or a coating on a lip, or a vapor barrier, or an exposed lip or the removal of a covering after shingles are in place. (PX47, pages 43–44). The Preisler reference has such missing elements. (Hoover 305–307). There was no emphasis on stretching, nor on the sequence of steps. However, stretching, which was mentioned only in passing in two pages of detailed argument in the File Wrapper, (PX47, pages 43–44) is present in the prior art stapling method, and the sequence of steps is also present in the prior art stapling method. (Oliver Tr. 458–459).

15. The fact that the Parker reference was not relied on by the Examiner against the method claims (original claims 7–16), File History (PX47, page 43) substantially weakens the presumption of validity since the Examiner was not informed of the steps of the stapling method and thus did not realize the true pertinency of Parker in its teaching of substituting a pre-applied adhesive where staples were previously used for sealing building insulation vapor barriers, Parker Patent No. 2,913,104 (PX58, col. 3, lines 16–26 and 30 -40). Even when cited against the article claims erroneous statements were made about Parker. For example, it was alleged erroneously that Parker is not and can not be used to seal adjacent blankets. (PX47, page 45). Since the application of the next blanket as taught by Parker would cause a lip to overlap a lip, it was a seal between adjacent blankets. (Hoover Tr. 309–310). Thus, the presumption of validity of the method patent is further weakened since the Examiner, when he did rely on Parker against the article claims, misunderstood Parker.

16. The steps of the method Patent No. 3,121,649 would also be obvious to one of ordinary skill in the art in view of the combination of the broad teachings of the Gustin-Bacon brochure (PX 53) with the Preisler Patent (PX49–52). Gustin-Bacon teaches applying an adhesive to the same surfaces as the surfaces on which the pre-applied adhesive is to be affixed. (Hoover Tr. 256). Gustin-Bacon is broad in its teachings and states that an adhesive should be used and leaves the method of applying it up to the user. (Hoover Tr. 260). Gustin-Bacon teaches that a pressure-sensitive adhesive can be used to achieve a seal of a vapor barrier. Gustin-Bacon recommends broadly that adhesive be used. (PX53, page 4). Adhesive can be brushed on the two-tab structure at the same location as Fig. 5 of Patent No. 3,121,649. (Dom-

holdt Tr. 524.) Adhesive has been applied from the roof. (Kopp Tr. 137–8, 141; Hoover Tr. 302). Thus, the steps of the method as taught by Gustin-Bacon would be the same as for the stapling method with the exception that in the sealing step, the sealing is by adhesive rather than by stapling.

17. It would be obvious to one of ordinary skill in the art to carry out the sealing step of Gustin-Bacon by the use of a pre-applied adhesive as taught by Preisler for comparable reasons to those given in connection with Findings of Fact Nos. 11 to 15 and Nos. 19 to 23.

18. The application of outer roofing panels are a mere aggregation. Even taking the Gustin-Bacon brochure in one of its specific disclosures of sealing from the inside, the mere rearrangement of the sequence of applying the roofing would be obvious to one of ordinary skill in the art in view of the aggregative nature of the use of such roofing materials. In such combination, it would be obvious to substitute Preisler for comparable reasons to those given in connection with Findings of Fact Nos. 12 and 13, and in Findings of Fact Nos. 19 to 23, particularly since Gustin-Bacon teaches that pressure-sensitive adhesive can be used to achieve a seal. (Hoover Tr. 255; PX 53, page 5).

19. Each of the combinations of references in Findings of Fact 7, 16 and 18 are also obvious for the additional reasons contained in the following Findings of Fact Nos. 20 to 23.

20. The steps of the method were, in fact, obvious to one of ordinary skill in the art. When Wade Dill of Brookpark Buildings, Inc. was shown samples of a blanket with a pre-applied adhesive, he ordered five thousand (5,000) square feet of such a blanket and, at the time of such purchase, which was prior to the date of the alleged invention, he intended to install it on a building by stretching adjacent blankets in abutting engagement on the roof of a building prior to removing the protective covering from the pre-applied adhesive. (Dill Tr. 40).

21. The almost simultaneous discovery by a plurality of independent workers of the use of a pre-applied adhesive to seal vapor barrier tabs further indicates the obviousness of the invention. Within a period of two years, three separate inventors applied the concept. Parker Patent No. 2,913,104 filed October, 1957, (PX58) discloses the principle applied to blankets to be placed against studs; Preisler (French) Patent No. 1,225,599 (PX49–52) filed November 12, 1958, discloses the principle applied to insulation bodies on concrete roofs; The Cleveland Fabricating Company applied the principle to a blanket (PX1; PX56) identical to that shown in Fig. 1 of Patent No. 3,121,649, for use in accordance with the same method. (Dill Tr. 40). Thus, the concept of use of a pre-applied adhesive on the same type of insulation as the Cleveland Fabricating prior use and comparable insulation to that of Parker and Preisler indicates that the alleged invention is merely following a trend which began shortly prior to the alleged invention. The particular steps chosen by Oliver indicate that in following the trend he merely followed the old stapling sequence of steps, merely substituting a pre-applied adhesive for a staple. Findings of Fact Nos. 7–9.

22. Defendant's witnesses appeared to infer that the method claims were granted for a *continuous* adhesive seal on a vapor barrier blanket stretched across the purlins of a building between the purlins and an outer surface covering, to seal against vapor between the purlins and the outer covering. The inference was that this was the invention for which the method claims were granted. Such an inference is contrary to the Patent Office record.

(a) The File History (PX47) patent claims were *not* granted for a continuous adhesive seal by a pre-applied adhesive. Original claims 17 and 18 recited such a concept. (PX47, page 23). Such claims were rejected by the Examiner (PX47, page 37). The Examiner held that such claims were not allowable in view of the combination

of the Jaeger Patent No. 2,799,232 (PX58), (which disclosed insulation stretched *across* purlins), in view of Parker (which teaches the use of a pre-applied pressure-sensitive adhesive to seal a vapor barrier). In the same action where most of the method claims were allowed, the Examiner finally rejected claims 17 and 18 (PX47, page 53) again on Jaeger and Parker, stating:

> "Nothing unobvious or unexpected is seen in substituting the insulating blanket structure shown by Parker for the insulation material 20 shown in the built-up roof structure disclosed by Jaeger."

(b) Oliver then cancelled claims 17 and 18. (PX47, p. 54). Thus, the claims were granted merely because of the alleged unobviousness of the particular steps. There is no testimony by Defendant's witnesses as to why the specific steps of the allowed claims were not obvious, or why such steps were surprising. The focus of Defendant's witnesses at trial was solely on the broad concept—i. e. on cancelled claims which were rejected by the Patent Office. When the steps are examined, the evidence indicates that the steps are the same steps which were followed in the prior art methods not before the Patent Office. (Findings of Fact Nos. 7–9; 16–17; 18.)

23. The specification of Patent No. 3,121,649 erroneously stated that the prior art method of brushed-on adhesive resulted in an inferior structure since it is "impossible to provide a non-leaking seal at the joints between the vapor barriers due to interference of the framing." (PX32, Col. 1, line 32). This is contrary to the evidence. (Dill Tr. 43; Heinlein Tr. 152, 153). Moreover, the Examiner indicated that in view of Parker, which does provide a continuous seal, a seal would be obvious.

24. The Preisler reference, PX49–51 has the elements of an insulation body, a vapor barrier along one face and projecting to form tabs, pre-applied pressure-sensitive adhesive is disposed on the tabs and covered by a removable protective covering wider than the adhesive. (Hoover Tr. 237–241). Preisler also teaches adhesive-to-adhesive for sealing adjacent insulation bodies. (Hoover Tr. 249).

25. The Gustin-Bacon brochure (PX 53), discloses a one-tab blanket and a two-tab blanket identical to that of the patents in suit (Hoover Tr. 254). Gustin-Bacon teaches the sealing of blankets by the application of adhesive to the same surfaces as the patent in suit (Hoover Tr. 256). The statement as to the kind of adhesive to be used is broad and unlimited (Hoover Tr. 255). Gustin-Bacon teaches that a vapor seal can be achieved between adjacent blankets by the use of a pressure-sensitive adhesive (Hoover Tr. 255).

26. It would be obvious to one of ordinary skill in the art to combine the teachings of Preisler of the use on vapor barrier tabs of a pressure-sensitive adhesive with a removable protective covering with the blanket of Gustin-Bacon

(a) on the "second surface" of the Gustin-Bacon blankets as taught by Preisler (Hoover Tr. 264) to invalidate claims 1 and 2 of Patent No. 3,307,306.

(b) in adhesive-to-adhesive contact as taught by Preisler (in ref. No. 7 of Figs. 1 and 2 (Hoover Tr. 262) on the same surfaces of Gustin-Bacon (Hoover Tr. 264) on which adhesive was always applied, to invalidate claims 3–6 of Patent No. 3,307,306.

27. Preisler is flexible (Hoover Tr. 230–234; 567–569).

28. The obviousness of the combination of Preisler with Gustin-Bacon of Finding of Fact 26 is evidenced by the facts that:

(a) The references perform in the combination as they do outside it. (Hoover Tr. 256).

(b) The use of a pre-applied adhesive on the tab of an insulation blanket (Oliver's alleged idea) was discovered previously by Messrs. Stone and Pinter. (PX1: Stone Tr. 58;

Pinter Tr. 54–55). Mr. Stone, like Mr. Oliver, got the idea after working in the field only two years. (Stone Tr. 66; Oliver Tr. 395). Mr. Pinter came up with the idea in the same conversation in which he was told by Mr. Stone of the way that the adhesive had been brushed on in the past. (Pinter Tr. 54–55).

(c) The references are better than the references relied on by the Examiner. Preisler shows an adhesive on a "second surface", and shows in the same reference adhesive-to-adhesive contact for sealing a vapor barrier (Finding of Fact No. 25). Gustin-Bacon teaches adhesive on the same surfaces as the patent. It also teaches the use of pressure-sensitive tape to seal vapor barriers (Findings of Fact No. 24). The Examiner misunderstood that Chamberlain had pressure-sensitive adhesive (Domholdt Tr. 525–526). The Examiner misunderstood the Parker reference. (Hoover Tr. 309).

(d) While Plaintiffs make argument that one Questel was the source of the ideas for those features that led to allowance of Patent No. 3,307,306, and that failure to list him as inventor should invalidate said patent, we do not reach this issue. We do determine, however, that there is ample evidence of record to support the proposition that whatever Questel's legal posture, the incontroverted factual context within which his contributions evolved lends weighty support to the argument that the features that led to allowance of claims of Patent No. 3,307,306 were obvious.

To the extent that Plaintiff's proposed Findings of Fact Nos. 37–41 illuminate that the allowance of claims in Patent No. 3,307,306 was predicated on features to which Questel made material conceptual contributions, we adopt them by way of reference.

(e) The placing of a pre-applied adhesive on one or more surfaces is a mere matter of choice to one of skill in the art. Plaintiff sells a blanket with only one adhesive (page 4, DXA) which is outside the scope of the claims, (Hoover Tr. 574–577) and one with two adhesives which is covered by the claims. There is no showing that one is any better than the other.

(f) The fact that between the short span of 1958 and 1959, six independent workers, Parker, Preisler, Stone, Pinter, Chamberlain and Oliver, all came across the idea of using a pre-applied adhesive to seal vapor barrier tabs of insulation indicates the actual location is a mere matter of chance depending on the way the blanket is to be used. The selection of the location on Gustin-Bacon is particularly obvious since it is placed on the same surfaces where the brushed-on adhesive had been applied. (Hoover Tr. 256).

29. Samples of a Cleveland Fabricating blanket (PX1), using a pre-applied adhesive on a tab of an insulation blanket, prior to the alleged invention, were shown to the Brookpark Insulation Company. Upon viewing the models (Dill Tr. 38) Mr. Dill, of said company, ordered 5,000 square feet (Votypka Tr. 122–123). The ordered insulation was not released since it was not ready in time for the planned job. (Votypka Tr. 123). The material was eventually sold for another purpose since it was not sold within the period of time that pressure-sensitive adhesive is warranted by the manufacturer (Stone Tr. 64). Cleveland Fabricating subsequently did sell insulation blankets with a pre-applied adhesive (DXA).

The Cleveland Fabricating blanket provides further evidence on the question of obviousness with respect to combining

the teachings of Preisler and Gustin-Bacon.

30. The only material distinction between claims 1, 4 and 6 and claims 2, 3 and 5 of Patent No. 3,307,306, are that the latter claims call for the protective covering being wider than the adhesive. (Hoover Tr. 183). Not only is this feature obvious in view of Preisler (Hoover Tr. 249), but the File History indicates that such feature was held by the Examiner to not be distinguishable over the art. The Examiner rejected original claims 1 and 3 even though they included a wider protective covering. (Hoover Tr. 225). The Examiner, in commenting on the article claims in the patent application, expressly stated that:

"The relative widths of the adhesive layer and the separation ribbons are considered to involve a matter of choice and degree within the skill of an ordinary worker in the building insulation art." (PX47, page 36) (Hoover Tr. 225–226).

31. The facts of this case did not justify an award of attorney's fees as requested by Plaintiff.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction to adjudicate the questions of validity of United States Patent Nos. 3,121,649 (Method) and 3,307,306 (Article) presented by the Complaint and the Supplemental Complaint of the Plaintiff and of infringement presented by the Counterclaim and the Supplemental Counterclaim of Defendant pursuant to 28 U.S.C. Secs. 1338 (a), 2201, and 2202. The questions of venue and the existence of a justiciable controversy are conceded herein by the parties pursuant to a Pretrial Stipulation filed with the Court.

2. A patent is presumed to be valid. Electric Vacuum Cleaner Co. v. P. A. Geier Co., 118 F.2d 221, 225 (6th Cir.–1941). However, the presumption is weakened upon a showing of pertinent prior art which was not before the Patent Office, Felburn v. New York Central Railroad, 350 F.2d 416 (6th Cir.–1965), cert. denied 383 U.S. 935, 86 S.Ct. 1063, 15 L.Ed.2d 852 (1966); Aluminum Company of America v. Sperry Products, Inc., 285 F.2d 911, 916 (6th Cir.–1960); Armco Steel Corp. v. United States Steel Corp., 203 F.Supp. 654, 656 (W.D.Pa.–1962), affirmed per curiam 316 F.2d 472 (3d Cir.–1963), or which was before the Patent Office but never applied or discussed by the Examiner. Sterling Aluminum Products, Inc. v. Bohn Aluminum & Brass Corp., 187 F.Supp. 879, 887 (E.D.Mich.–1960), affirmed 298 F.2d 538 (6th Cir.–1962).

3. The presumption of validity is also weakened upon a showing that misstatements concerning a prior art which was applied by the Examiner were presented to the Patent Office. Amerline Corporation v. Cosmo Plastics Company, 271 F.Supp. 215, 230 (N.D.Ill.–1967).

4. Misstatements in the specification of the patent concerning the prior art, whether intentional or unintentional, provide the assumption that the Examiner did not evaluate the application in the true light of the prior art. Minnesota Mining & Mfg. Co. v. Norton Co., 280 F.Supp. 674 (N.D.Ohio–1967).

5. In determining the question of obviousness, references may be combined; such combination is a logical necessity. Each reference is important for what it contributes to the combination. Sterling Aluminum Products, Inc. v. Bohn Aluminum & Brass Corp., 187 F.Supp. 879, 885 (E.D.Mich.–1960), affirmed 298 F.2d 538 (6th Cir.–1962).

6. In determining the obviousness of a combination of references, a suggestion in the prior art to make the combination is relevant. Bendix Corp. v. Freeland Gauge Co., 271 F.Supp. 888, 890 (E.D.Mich.–1967).

7. Evidence of obviousness is indicated where references perform in the combination as they do outside it. Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S.

**1282**

147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950).

■ 8. The almost simultaneous discovery of the general subject matter by a plurality of independent workers is evidence of obviousness. Felburn v. New York Central Railroad, 350 F.2d 416, 425 (6th Cir.–1965), cert. denied 383 U.S. 935, 86 S.Ct. 1063, 15 L.Ed.2d 852 (1966).

■ 9. A prior art development is relevant on the question of obviousness even if such prior development does not qualify as a public use or sale. Minnesota Mining & Mfg. Co. v. Norton Co., 280 F.Supp. 674 (N.D.Ohio–1967); Felburn v. New York Central Railroad, 350 F.2d 416, 425 (6th Cir.–1965), cert. denied 383 U.S. 935, 86 S.Ct. 1063, 15 L.Ed.2d 852 (1966).

■ 10. Evidence of obviousness is provided by the testimony of one of ordinary skill in the art. Minnesota Mining & Mfg. Co. v. Norton Company, 280 F.Supp. 674 (N.D.Ohio–1967).

■ 11. Evidence of obviousness is present where the alleged invention constitutes a mere substitution of equivalents. Minnesota Mining & Mfg. Co. v. Norton Co., 280 F.Supp. 674 (N.D.Ohio–1967); Stilson Tool, Inc. v. Associates Machine Co., 271 F.Supp. 597, 601 (E.D. Mich.–1967).

■ 12. In determining what constitutes the claimed invention, the allowed claims must be compared to the rejected ones and to the state of the prior art. Graham v. John Deere Co., 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

■ 13. Patents Nos. 3,121,649 and 3,307,306 are invalid under 35 U.S.C. 103 as the difference between the claims and the prior art would be obvious to one of ordinary skill in the art of building insulation fabrication and installation. Graham v. John Deere Co., supra.